**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Ralph Joseph WALKER,**
**Defendant–Appellee.**

**No. 90–4067.**

United States Court of Appeals,
Tenth Circuit.

May 7, 1991.

Rehearing Denied Aug. 13, 1991.

Dee Benson, U.S. Atty. (Wayne Dance, Asst. U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellant.

James Esparza, Salt Lake City, Utah, for defendant-appellee.

Before SEYMOUR and EBEL, Circuit Judges, and BROWN, Senior District Judge.[*]

WESLEY E. BROWN, Senior District Judge.[*]

In this appeal, the Government challenges the district court's order suppressing cocaine found in the defendant's car. 751 F.Supp. 199. The district court granted the defendant's motion to suppress the evidence upon finding that the defendant had been illegally detained and questioned after he was stopped for speeding on a Utah highway. For the reasons set forth herein, we remand the case to the district court for further proceedings.

The pertinent facts as found by the district court are as follows. On January 10, 1990, the defendant was traveling west on Interstate 70 in Emery County, Utah, in a 1988 Cadillac. Officer Richard Graham of the Emery County Sheriff's Department was traveling east on the interstate. Officer Graham clocked the defendant's car going 67 miles per hour in a 55 mile per hour speed zone. Graham made a "u-turn" and pulled the defendant over.

Before getting out of his car, Graham ran an NCIC (National Crime Information Center) check on the defendant's car and was informed that it had not been reported stolen. Graham approached the defendant's car and told the defendant that he had been clocked speeding. Graham asked the defendant for a driver's license and

[*] The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

vehicle registration and also asked the defendant where he was coming from and his destination. The defendant stated that he was coming from Kansas City and was on his way home. The defendant asked permission to get out of his car so he could get his license out of his back pocket. As the defendant stepped out of his car, he gave Graham the vehicle registration. The defendant was nervous. His hands shook. It was difficult for him to retrieve his license from the small compartment in his wallet. He retrieved the license and gave it to Officer Graham.

The license was issued in the defendant's name. It identified him and established his right to operate a motor vehicle. The car was registered in the name of Marian Smith. Officer Graham questioned the defendant about the registration. The defendant told Graham that Marian Smith was his sister and that he was driving the car with her permission. It was later established that the defendant had subleased the vehicle from Ms. Smith. A copy of the sublease agreement was in the glove compartment of the vehicle at the time the defendant was stopped.

While retaining the defendant's license and registration, Officer Graham asked the defendant a number of specific questions unrelated to the traffic stop. He asked if there were any weapons in the vehicle, if there were any open containers of alcohol in the vehicle, and if there was any controlled substance or paraphernalia of any kind in the vehicle. Graham also asked if the defendant were carrying any large quantities of cash. The defendant answered "no" to each question except for stating that he had about $1600.00 in cash in the glove compartment and about $150.00 cash in his pocket. While still holding the defendant's license and registration, and without discussing the speeding violation or writing a citation or informing the defendant that he was free to go, Officer Graham asked the defendant if he could search the vehicle for the items about which he had inquired. The defendant responded, "Sure, go ahead." Officer Graham asked the defendant to stand by the front fender of the car, which he did. Graham patted the defendant down, checking under his sweater, the top of his slacks, and down his legs. Graham then searched the passenger compartment of the car. He found two rolls of cash in the glove compartment. Graham asked for and received the key to the trunk. Upon opening the trunk, he noticed two packages wrapped in clear plastic tape near the back seat. They appeared to be kilogram packages of cocaine. Graham then arrested the defendant. A search warrant was later obtained which led to the discovery of 86 kilogram packages of cocaine in the car.

Relying on *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988), the district court determined that Officer Graham's continued detention of the defendant in order to ask him intrusive questions unrelated to the traffic stop was a violation of the defendant's Fourth Amendment rights. The district court found that the defendant's nervousness did not create an objectively reasonable suspicion of criminal activity that would justify the detention. The court further indicated that the defendant had produced sufficient proof showing he was entitled to operate the car such that no reasonable suspicion of criminal activity arose from the fact that the car was not registered to the defendant. Having found that the detention and questioning violated the defendant's constitutional rights, the district court suppressed the evidence found in the car. The court did not address the Government's argument that the search was justified by the defendant's consent.

The appellant United States makes several arguments on appeal. First, appellant argues that the district court erred by finding that the officer had to have reasonable suspicion before asking questions of the defendant unrelated to the traffic stop. Appellant contends that Officer Graham's conduct was reasonable when judged by the totality of the circumstances. Alternatively, appellant contends that Officer Graham's detention and questioning of the defendant were based on a reasonable suspicion of criminal activity and were therefore lawful. Finally, appellant contends that

the district court erred by failing to address the issue of consent. We affirm the district court insofar as it found that the detention violated the defendant's Fourth Amendment rights; however, we find that under *Guzman* the district court must address the issue of whether the search was nonetheless justified by the defendant's consent.

In reviewing appellant's claims, we do not substitute our judgment for the factual findings of the district court unless those findings are clearly erroneous. *United States v. Werking*, 915 F.2d 1404, 1406 (10th Cir.1990). At a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge. *Id* (citing *United States v. Pappas*, 735 F.2d 1232, 1233 (10th Cir.1984)). Accordingly, we review the evidence in a light favorable to the district court's determination. *Id.* The ultimate determination of reasonableness under the Fourth Amendment, however, is a determination of law that we review *de novo*. *United States v. Pena*, 920 F.2d 1509, 1513–14 (10th Cir.1990).

The Fourth Amendment protects against unreasonable searches and seizures. The stopping of a vehicle and the detention of its occupants constitute a "seizure" within the meaning of the Fourth Amendment. An ordinary traffic stop is a limited seizure, however, and is more like an investigative detention than a custodial arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984) ("[T]he usual traffic stop is more analogous to a so-called 'Terry stop' ... than to a formal arrest.") Accordingly, we have judged the reasonableness of traffic stops under the principles pertaining to investigative detentions announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988).

The Supreme Court has adopted a dual inquiry for evaluating the reasonableness of investigative detentions. Under this approach, the court determines "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. As the district court here recognized, we applied this inquiry in *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988), a case involving a routine traffic stop. In *Guzman*, a state police officer stopped a vehicle because the driver and a passenger in the car were not wearing their seat belts. The driver produced documents that satisfied the officer as to the driver's right to operate the vehicle. Although the officer had no reasonable suspicion of criminal activity other than a seat belt violation, he decided to conduct a further investigation and proceeded to ask the occupants a series of intrusive questions unrelated to the traffic stop. He did not return the defendant's driver's license. We concluded that the officer's detention of the occupants to ask these intrusive questions was unreasonable. We stated:

> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. * * * When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.

*Id.* at 1519 (citations omitted). We noted that although the detention was of a relatively short duration, "it nevertheless unreasonably extended beyond the length necessary for its only legitimate purpose— the issuance of a citation for a seat belt violation." *Id.* at 1519 n. 8.

There is no question that the initial stop of the defendant's vehicle in the instant case was justified. The district court concluded that the defendant had been lawfully stopped for speeding. After being stopped, the defendant produced a valid driver's license that established his right to operate a motor vehicle. The defendant

also produced the registration slip for the car. The district court concluded that under the circumstances the defendant had produced sufficient proof to show he was entitled to operate the car. The car was registered to Marian Smith, whom the defendant identified as his sister. An NCIC check indicated to Graham that the car was not stolen. Officer Graham did not pursue the matter of the registration any further and his testimony shows that he was satisfied as to the defendant's right to operate the car. Graham gave no testimony indicating that he suspected that the defendant was involved in any criminal activity. *Cf. United States v. Pena,* 920 F.2d 1509, 1514 (10th Cir.1990), *petition for cert. filed,* Mar. 4, 1991, No. 90–7324 (Circumstances, including the fact that the driver did not recognize the name of the registered owner of the vehicle, justified a detention to investigate whether vehicle was stolen); *United States v. Obregon,* 748 F.2d 1371, 1376 (10th Cir.1984) (The driver was not listed as an authorized operator on a rental agreement and was unable to provide a means of contacting the lessee). Had Officer Graham been concerned about the registration and requested further proof, the defendant could have produced a contract showing that he subleased the car from Ms. Smith. In this case, as in *Guzman,* the defendant produced sufficient proof that he was entitled to operate the car.

■ Instead of issuing a citation, Officer Graham decided to detain the defendant and conduct an inquiry into matters unrelated to the traffic stop. As we stated in *Guzman,* the officer making a traffic stop may request a driver's license and registration, run a computer check, and issue a citation. Once the driver has produced a valid license and proof that he is entitled to operate the car, "he must be allowed to proceed on his way, without being subject

to further delay by police for additional questioning." *Guzman,* 864 F.2d at 1519. *See also Pena, supra.* In this case, as in *Guzman,* the detention of the defendant unreasonably extended beyond the length necessary for the issuance of a citation.[1] The officer detained the defendant to ask him questions unrelated to the speeding infraction or to the defendant's right to operate the car. Thus, the detention was not reasonably related in scope to the circumstances that justified the interference in the first place. As such, it was an unreasonable seizure under the Fourth Amendment. *Cf. United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) ("Clearly this case does not involve any delay unnecessary to the legitimate investigation of the law enforcement officers"). *See also United States v. Morales–Zamora,* 914 F.2d 200, 203 (10th Cir.1990) (At a roadblock to check drivers' licenses and registrations, a canine sniff of the defendants' vehicle was not an unlawful detention because agents completed the canine sniff before another agent completed his examination of the defendants' documents).[2]

■ Appellant's effort at distinguishing the *Guzman* case is ineffectual. Without relating any significant factual differences between the two cases, appellant simply asserts that the conduct of the officer in *Guzman* was unreasonable whereas Officer Graham's conduct was reasonable. We see no facts that would make the rule of *Guzman* inapplicable here. Notwithstanding *Guzman,* appellant insists that this court has "consistently recognized the appropriateness of a request to search made by a police officer during a valid traffic stop, without a requirement of independent justification for the request." App.Br. at 6. Appellant characterizes the type of questioning that occurred here as a consen-

---

1. Although neither party has addressed the issue, it appears that Utah law does not allow an officer in these circumstances to make a custodial arrest for a speeding violation. *See* Utah Code Ann. § 77–7–18 et seq.

2. Under the reasoning of *United States v. Morales–Zamora,* 914 F.2d 200 (10th Cir.1990), our determination that the defendant was unlawful-

ly detained might be different if the questioning by the officer did not delay the stop beyond the measure of time necessary to issue a citation. For example, this case would be changed significantly if the officer asked the same questions while awaiting the results of an NCIC license or registration inquiry.

sual encounter that is not governed by the Fourth Amendment. We have noted on several occasions that the Fourth Amendment's ban on unreasonable seizures does not prohibit a police officer from asking a motorist questions if the encounter is a consensual one. "Because an individual is free to leave at any time during such an encounter, he is not 'seized' within the meaning of the fourth amendment." *United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir.1990). *See also United States v. Turner*, 928 F.2d 956 (10th Cir.1991); *United States v. Deases*, 918 F.2d 118, 122 (10th Cir.1990), *petition for cert. filed*, Feb. 22, 1991, No. 90–7283. This line of cases does not help appellant's cause, however, because the encounter in this case was clearly not consensual. Officer Graham retained the defendant's driver's license and registration during the entire time he questioned the defendant. The district court found that the defendant was not free to leave and that his detention was a seizure within the meaning of the Fourth Amendment. *See Turner, supra; Werking*, 915 F.2d at 1409. These findings are supported by the evidence.

■ Appellant next contends that the continuing detention of the defendant was justified by a reasonable suspicion of criminal activity. The Government points out that when the defendant was stopped he was nervous and his hands shook. Appellant states that we have previously upheld investigative detentions based solely on an individual's "nervousness." (*citing United States v. Benitez*, 899 F.2d 995, 997 (10th Cir.1990)). As an initial matter, we note that although Officer Graham indicated that the shaking of the defendant's hands was unusual, he did not testify that it caused him to suspect that the defendant was involved in any kind of criminal activity. Moreover, the district court here concluded that under the circumstances the defendant's nervousness did not give rise to an objective reasonable suspicion. We must accept this determination unless it is clearly erroneous. *United States v. Turner*, 928 F.2d 956 (10th Cir.1991). The significance of the defendant's actions must be judged in light of all the circumstances. *Cf. Turner, supra* ("Defendant's increased nervousness added to the officer's suspicion, justifying the request to search the car.") In this case the defendant's hands shook after he had been stopped by a police officer for speeding. The district court heard the testimony of the witnesses and was in a better position than we to judge the extent and significance of the defendant's nervousness. We are not convinced after reviewing the record that the district court's finding on this issue is clearly erroneous.[3]

■ Although we conclude that the defendant's Fourth Amendment rights were violated by the detention, we agree with appellant that the district court should have addressed the issue of the defendant's consent to the search of his car. In *Guzman* we noted that consent given following a Fourth Amendment violation may be valid if it is voluntary in fact. *Guzman*, 864 F.2d at 1520. If the consent is not sufficiently an act of free will to purge the primary taint of the illegal detention, however, it must be suppressed as "fruit of the poisonous tree." *United States v. Maez*, 872 F.2d 1444, 1453 (10th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 1005, 112 L.Ed.2d 1087 (1991). Voluntariness is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

In *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) the Supreme Court cited three factors relevant to the determination of whether evidence obtained from a suspect was "sufficiently an act of free will to purge the primary taint" of an illegal arrest. These factors take into account the interests underlying the Fourth Amendment, including the concern that evidence not be obtained by exploita-

---

**3.** The general term "nervousness" encompasses an almost infinite variety of behaviors. No doubt there are circumstances in which an individual's nervous behavior would give rise to a reasonable suspicion of criminal activity. We find only that the district court's determination that it did not do so here is not clearly erroneous.

tion of illegal police conduct. *Brown,* 422 U.S. at 602–04, 95 S.Ct. at 2261–62. In *Guzman,* we directed the district court to consider these *"Brown* factors" upon remand in making its determination of whether the consent to search was voluntary. *Guzman,* 864 F.2d at 1521.

 We likewise remand this case to the district court for findings on the issue of voluntariness, with directions to consider the factors articulated in *Brown.* *See United States v. Carson,* 793 F.2d 1141, 1152 (10th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986). The district court should examine the totality of the circumstances surrounding the defendant's consent, focusing on: the temporal proximity of the illegal detention and the consent, any intervening circumstances, and, particularly, the purpose and flagrancy of the officer's unlawful conduct. *Cf. Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62. As always, the burden of proving the voluntariness of consent is on the Government. *Schneckloth,* 412 U.S. at 222, 93 S.Ct. at 2045.

The order of the district court is VACATED and the case is REMANDED for further proceedings.