UNITED STATES of America, Plaintiff,

v.

**Ralph Joseph WALKER, Defendant.**

**No. 90–CR–13J.**

United States District Court,
D. Utah, C.D.

Aug. 17, 1992.

---

David J. Jordan, U.S. Atty., Wayne T. Dance, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff.

James Esparza, Salt Lake City, Utah, for defendant.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

### I. Introduction

The court first considered this matter in 1990. In an opinion dated March 27, 1990, the court granted a Motion to Suppress filed by the defendant Ralph Joseph Walker ("Walker"), finding that Walker had been unconstitutionally detained in light of *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988). *See United States v. Walker*, 751 F.Supp. 199 (D.Utah 1990). In *Guzman*, the Court of Appeals stated:

> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he [or she] is entitled to operate the car, he [or she] must be allowed to proceed on his [or her] way, *without being subject to further delay by police for additional questioning.*

*Guzman*, 864 F.2d at 1519 (citations omitted) (emphasis added).

The United States appealed this court's order of suppression to the United States Court of Appeals for the Tenth Circuit. The Court of Appeals affirmed the footing for this court's finding of an unconstitutional detention, recognized the existence of the Fourth Amendment violation upon which this court's order of suppression was based, and reaffirmed the authority cited by this court in support of its order. *See United States v. Walker*, 933 F.2d 812 (10th Cir.1991). The Court of Appeals,

however, vacated this court's order of suppression. It observed that this court did not treat Walker's alleged consent to the search of his automobile, and remanded the matter for that to be done pursuant the multiple factors set forth in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Indeed, this court did not treat the question of Walker's alleged consent. Having found that Walker was unconstitutionally detained in light of *Guzman*, this court was of the opinion that such further analysis was unnecessary. The United States requested a rehearing before the Court of Appeals. This request was denied. *See United States v. Walker*, 941 F.2d 1086 (10th Cir.1991). Thereafter, the United States petitioned the United States Supreme Court for a Writ of Certiorari. *See United States v. Walker*, —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). That petition was denied.

After remand, at a conference held on May 22, 1992, this court requested that the parties file briefs on the issue of Walker's alleged consent and the factors set forth in *Brown*. After carefully considering the briefs filed by the parties and reviewing the record in this case, the court, for the reasons set forth below, again GRANTS Walker's Motion to Suppress.

### II. Discussion

The question on remand is whether the unconstitutional and illegal detention of Walker without probable cause, and in violation of *Guzman*, was cured by Walker's alleged consent to the search of his automobile given while he was unlawfully detained. Specifically, the Court of Appeals remanded this case "for findings on the issue of voluntariness, with directions to consider the factors articulated in *Brown*." *Walker*, 933 F.2d at 818.[1] In *Brown*, the

---

1. The defendant in *Brown* was arrested without probable cause and without a warrant under circumstances indicating that the arrest was investigatory. After the defendant had been given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965), he made in-custody inculpatory statements and was later indicated for murder. Subsequently, the defendant filed a pretrial motion to suppress the statements which was denied. The statements were used in the trial and the defendant was convicted. The conviction was appealed and the case ultimately made its way to the United States Supreme Court. The inquiry facing the Court which may be relevant to this case was whether the statements made by the defendant after he was given his *Miranda* warnings were made voluntarily.

United States Supreme Court discussed the factors relevant to the determination of whether a defendant's act in making statements after an unlawful arrest was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Brown*, 422 U.S. at 597, 95 S.Ct. at 2258. Thus, the query in this case is whether Walker's alleged consent after he was unlawfully detained in violation of *Guzman*, without probable cause and before any *Miranda* warnings were given, was "sufficiently an act of free will to purge the primary taint of the unlawful [detention]." *Id.*

The Supreme Court has noted that the question in a case such as this is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at [sic] by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Id.* 422 U.S. at 599, 95 S.Ct. at 2259 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) quoting Maguire, *Evidence of Guilt* 221 (1959)). The factors to be applied when making such a determination are discussed in *Brown*. As stated by the Tenth Circuit, these factors, as applied to this case, are "the temporal proximity of the illegal detention and the consent, any intervening circumstances, and, particularly, the purpose and flagrancy of the officer's unlawful conduct." *Walker*, 933 F.2d at 818.

The United States states that Walker "provided consent to search within seconds after his detention became illegal, according to the rulings of this Court and the Tenth Circuit. Consequently, the temporal proximity was extremely close, and there was no realistic opportunity for intervening circumstances." Plaintiff's Memorandum of Law at 2. Thus, the United States, frankly, concedes the obvious absence of any meaningful interval of time between Walker's illegal detention and his alleged act of consent to the search of his vehicle. Additionally, the United States also concedes the absence of any intervening circumstance. The illegal detention and the alleged consent were intimately connected in time and circumstance. They were all of a piece. Walker did not volunteer information or initiate the conversation during which the alleged consent occurred. The record shows that the request for permission to search Walker's vehicle came from the officer. The court, therefore, turns its attention to the third factor to be considered, namely the "purpose and flagrancy" of the officer's unlawful conduct.

Although the United States fails to address the officer's purpose in unlawfully detaining Walker, it does contend that there was nothing "flagrant" in the officer's misconduct. The court disagrees. As noted above, the Tenth Circuit has stated:

> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he [or she] is entitled to operate the car, he [or she] must be allowed to proceed on his [or her] way, *without being subject to further delay by police for additional questioning.*

*Guzman*, 864 F.2d at 1519. Peace officers *must* conform their official conduct to the standard quoted above. After the requirements of *Guzman* had been met, the officer in this case had a duty to let Walker proceed "without being subject to further delay . . . for additional questioning." *Id.*

In contrast, this case involves the voluntariness of the defendant's alleged consent to the search of his automobile after a traffic stop while he was being unlawfully detained without probable cause and before he was given *Miranda* warnings. In *United States v. Mendoza–Salgado*, 964 F.2d 993 (10th Cir.1992), the Tenth Circuit did determine that the standard set forth in *Brown* is applicable to cases involving a defendant's alleged consent to a search. The facts in *Mendoza–Salgado*, however, were much different than those involved in this case. As noted above, Walker was being unlawfully detained when the officer asked for his consent to the search of his vehicle without informing him that he had the right to withhold consent. In contrast, the officers in *Mendoza–Salgado* obtained written consent only after informing the individual that she had the right to withhold consent. These are important factual distinctions between *Brown, Mendoza–Salgado* and this case.

He deliberately did not do so. Instead, he detained Walker unlawfully without probable cause to inquire into matters unrelated to the traffic stop, seeking information to which the officer was not then entitled. Such conduct is flagrant and such purpose directly exploits the unlawful detention. Both the conduct and the purpose are in direct violation of the law set forth in *Guzman.* A question directed to a person who is not free to go, as in this case, may well be different than a question directed to a person who is free to go. In sum, the inquiry by the officer regarding Walker's consent should never have been made at the time it was made. The stain of the illegal detention colors the whole continuum of events, including the alleged consent. They are all of a piece.

Additionally, in the context of an illegal detention following a simple traffic stop, Walker's consent must be "informed" in order to be effective. He must be aware of that to which he consents, its scope and its breadth. Walker was unlawfully detained. He was not free to leave. Thus, he could not effectively consent to a search free from the taint of the violation of his Fourth Amendment rights unless he was aware that his Fourth Amendment rights had been and were being violated. Indeed, *Brown,* the source of the factors discussed in this opinion, does not stand for the proposition that an unlawfully detained, uninformed and un-Mirandized defendant can effectively consent to a search. In fact, one Supreme Court Justice, Justice Powell, noted that he would require "some demonstrably effective break in the chain of events leading from the illegal arrest to the [consent], such as actual consultation with counsel or the accused's presentation before a magistrate for a determination of probable cause, before the taint can be deemed removed." *Brown,* 422 U.S. at 611, 95 S.Ct. at 2265 (Powell, J., concurring in part). Neither of these recommended events occurred. Nor did Walker learn from the arresting officer or any other source that his Fourth Amendment rights had been violated, that absent probable cause his automobile was not subject to a search, and that such a search could not be done absent his informed consent. The court, therefore, finds that Walker's alleged consent was no consent at all. Such uninformed consent could not remove, cure or sanitize the taint of the unconstitutional detention. It was the product of such detention.[2]

## III. Conclusion

Based on the foregoing, the court finds that Walker's alleged "consent" did not

---

**2.** The United States has filed a supplemental document which brings *United States v. Mendoza–Salgado,* 964 F.2d 993 (10th Cir.1992) to the attention of the court. In this regard, the United States appears to argue that under *Mendoza–Salgado,* the court need not and cannot impose on the government the requirement that Walker's consent be informed. In support of this argument, the United States cites the following passage from *Mendoza–Salgado:*

We have carefully weighed [the defendant's] additional arguments against the totality of the circumstances and the three factors set forth in *Brown* and *Guzman.* We remain convinced [the defendant's wife's] consent was unequivocal, freely given and not obtained as the result of any improper police coercion or duress. Our Circuit does not believe that under *Wong Sun* or *Brown,* "the government is required to, show attenuation beyond a finding of voluntary, valid consent under Fourth Amendment standards." As a result, [the defendant's wife's] valid consent sufficiently purged the agent's warrantless entry of any primary taint, thereby rendering the search valid.

*Id.* at 1013 (citations omitted).

The passage cited above does not stand for the proposition that a unlawfully-detained defendant's consent need not be informed. Indeed, this passage states that the government must show that the consent was not only voluntary but also "valid". This passage states that the consent must be voluntary and valid under Fourth Amendment standards. As noted above, the Fourth Amendment standard applicable to this case was set forth in *Guzman.* The officer's conduct in this case was clearly violative of the *Guzman* standard. Furthermore, the facts of *Mendoza–Salgado* do not support the argument that the court cannot require that an unlawfully-detained defendant's consent be informed. As noted in footnote 1 of this opinion, the officers in *Mendoza–Salgado* obtained written consent only after informing the individual that she had the right to withhold consent. Walker was not so informed. In sum, *Mendoza–Salgado* is by no means dispositive of the issues raised by this case. In fact, due to the vast factual differences between this case and *Mendoza–Salgado,* *Mendoza–Salgado* arguably is not even instructive on the issues raised by this case.

"purge the taint" of the officer's unlawful and flagrant conduct in unconstitutionally detaining Walker for the illegal purpose of seeking to obtain incriminating evidence to which he was not constitutionally entitled. The evidence seized from Walker's vehicle, therefore, was the result of the exploitation of the unlawful detention. The unlawfully obtained evidence, therefore, must again be suppressed. As stated by this court when this case was first considered, "[t]his is done not to insulate a defendant from prosecution but to vindicate—take seriously—the applicable constitutional provision." *Walker*, 751 F.Supp. at 204. In sum, the state, in fulfilling its responsibilities in dealing with the lawless, must itself act lawfully.

IT IS SO ORDERED.