**UNITED STATES COURT OF APPEALS**
**Filed 5/24/96**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DIONICIO CARMONA-LEON,

      Defendant-Appellant.

Case No. 95-2142

(D.C. CR 95-71 HB)
(District of New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before BRORBY, EBEL, and HENRY, Circuit Judges.

---

On February 8, 1995, a federal grand jury sitting in the District of New Mexico returned an indictment against defendant-appellant Dionicio Carmona-Leon charging him with two counts of transporting illegal aliens and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 18 U.S.C. § 2. After entering a plea of not guilty Mr.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Carmona filed two motions: (1) a motion to dismiss the indictment, in which he argued that the administrative seizure and forfeiture of his vehicle constituted punishment for the crime charged in the indictment and therefore was barred by the Fifth Amendment's Double Jeopardy Clause; and (2) a motion to suppress evidence, in which he alleged that the roving border patrol stop of his vehicle was unlawful.

The district court denied both of Mr. Carmona's motions. Subsequently, Mr. Carmona pleaded guilty to the first count of the indictment, conditioned on his right to appeal the district court's denial of his motions. The district court sentenced Mr. Carmona to serve a term of probation of two years. Mr. Carmona filed a timely notice of appeal seeking review of the district court's rulings on his motions. We affirm the district court.[1]

## I. BACKGROUND

At 11:50 p.m on January 16, 1995, two United States Border Patrol agents stopped Mr. Carmona while he was driving his 1992 Ford Mustang on New Mexico Highway 185 some sixty-five miles from the Mexican border. The agents pulled Mr. Carmona over after observing: (1) that his Mustang had heavily tinted windows, which prevented the agents from seeing into the vehicle's passenger compartment, (2) that the car was riding

---

[1] After examining the briefs and appellate record, this panel has determined that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

low to the ground indicating that it could be transporting substantial cargo or several people, (3) that the vehicle's license plate was displayed upside down, which the agents suspected to be an effort to hinder law enforcement officers from running a registration check on the vehicle, and (4) that the vehicle was not one of the few vehicles known to the agents from experience that regularly traveled that stretch of Highway 185 at that time of night.

After stopping the Mustang, the agents discovered that the three passengers were illegal aliens. Mr. Carmona was placed under arrest for transporting illegal aliens. The Mustang was seized by the United States Border Patrol.

The advertisement of seizure of Mr. Carmona's Mustang was first published on January 25, 1995. Aple's Br. Ex. 2. Mr. Carmona did not seek judicial determination of the forfeiture under 8 C.F.R. § 274.12. Rather, on February 2, 1995, Mr. Carmona sent a letter to the Border Patrol which asked for "mitigation of forfeiture [under 8 C.F.R. § 274.16] . . . realiz[ing] that a penalty is imposed." Aple's Br. Ex. 4. The Border Patrol responded to Mr. Carmona's letter on February 9, 1995, informing him that his letter was insufficient to request relief from forfeiture because it lacked evidence of Mr. Carmona's property interest in the Mustang. The Border Patrol specifically requested a notarized copy of the vehicle's title. Aple's Br. Ex. 5. On February 14, Mr. Carmona forwarded a notarized copy of the Mustang's title which listed Mr. Carmona as the Mustang's registered owner and Ford Motor Credit Company as the Mustang's first lienholder.

Aple's Br. Ex. 6. This copy of the title was received by the Border Patrol on February 22, 1995. Mr. Carmona's Mustang was declared seized on February 15, 1995 after the Border Patrol had not received a claim and cost bond requesting judicial determination of forfeiture within the prescribed twenty day period following January 25, 1995. See 8 C.F.R. § 274.12. On March 15, 1995, the Border Patrol received a statement entitled "Agreement to Forfeit Interest in Property" dated March 13, in which Mr. Carmona "agree[d] as claimant-owner, to forfeit his interest in [the Mustang]." Aple's Br. Ex. 7. That same day, the Border Patrol sent Ford Motor Credit Company a notice granting remission and sent Mr. Carmona a letter denying his petition for relief and notifying him of the procedure for requesting reconsideration.

## II. DISCUSSION

Mr. Carmona appeals the denial of his motion to dismiss the indictment and the denial of his motion to suppress the evidence from the border patrol stop. We have jurisdiction to hear Mr. Carmona's appeal pursuant to 28 U.S.C. § 1291. A district court's denial of a motion to dismiss an indictment on double jeopardy grounds is reviewed de novo. United States v. German, 76 F.3d 315, 317 (10th Cir. 1996). In reviewing the denial of a motion to suppress, we must accept the district court's factual findings unless they are clearly erroneous. United States v. Guillen-Cazares, 989 F.2d 380, 382 (10th Cir. 1993). However, the ultimate determination of reasonableness under

the Fourth Amendment is a legal question that we review de novo. Id.; United States v. Walker, 933 F.2d 812, 815 (10th Cir. 1991), cert. denied, 502 U.S. 1093 (1992).

## A. Motion to Dismiss

Mr. Carmona argues that the district court erred in denying his motion to dismiss because the administrative seizure of his car was punishment precluding a subsequent criminal indictment based on the same conduct (the transportation of illegal aliens).

We addressed substantially the same issue in German. We held that "[the defendant] was never placed in jeopardy or 'punished' in any constitutional sense because he was never a party to any proceeding designed to adjudicate his personal culpability." German, 76 F.3d at 320. The defendant in German merely filed a petition for remission and did not ask for judicial determination of the forfeiture. Id. at 317.

Mr. Carmona's position is analogous to that of the defendant in German. In his February 2, 1995 letter to the Border Patrol, Mr. Carmona stated: "I am asking for a mitigation of forfeiture. I realize that a penalty is imposed." Aple's Br. Ex. 4. Because Mr. Carmona did not ask for a judicial determination of the forfeiture of the Mustang, he "never became a party to any proceeding designed to adjudicate his personal culpability." German, 76 F.3d at 320. Thus, the administrative forfeiture of Mr. Carmona's Mustang did not amount to jeopardy nor did it subject him to punishment under the Fifth Amendment.

5

## B.  Motion to Suppress

Mr. Carmona argues that when the Border Patrol stopped his vehicle, they did so without reasonable suspicion, thereby violating his rights under the Fourth Amendment. As a result, he maintains that the evidence obtained during the stop should have been suppressed.

Border Patrol agents on roving patrol may stop vehicles if, given the totality of the circumstances, "they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country."  Guillen-Cazares, 989 F.2d at 382 (10th Cir. 1993) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975).  Further, "an 'officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling.'"  United States v. Monsisvais, 907 F.2d 987, 990 (10th Cir. 1990) (quoting Brignoni-Ponce, 422 U.S. at 885).

The facts presented in this case handily meet this standard.  The stop occurred near midnight on a highway known to the Border Patrol agents as a common conduit for trafficking in illegal aliens.  The agents were familiar with the very few local vehicles that used the highway at that time of night, and Mr. Carmona's Mustang was not familiar to them.  Thus drawn to give the Mustang closer attention, the agents noticed that the car was riding low, the windows were heavily tinted, and the license plate was on upside down (all of which suggested that the vehicle might be carrying illicit cargo).  In light of

6

these facts, and the rational inferences drawn from them, the agents' suspicion that Mr. Carmona's vehicle contained illegal aliens was reasonable. Therefore, the stop of Mr. Carmona's vehicle did not violate the Fourth Amendment.

## III.  CONCLUSION

For the forgoing reasons, we AFFIRM the decision of the district court.


Entered for the Court,

ROBERT HENRY
Circuit Judge