UNITED STATES of America, Plaintiff,

v.

**Gloria NUNO, Defendant.**

**No. 95–CR–253G.**

United States District Court,
D. Utah,
Central Division.

Nov. 21, 1996.

---

Assistant United States Attorney, Brooke C. Wells, for Plaintiff.

D. Gilbert Athay, Salt Lake City, UT and Eliezer Appel, Los Angeles, CA, for Defendant.

## MEMORANDUM DECISION and ORDER

J. THOMAS GREENE, District Judge.

This matter is before the court on defendant's motion to suppress evidence. An evidentiary hearing was held in which defendant was represented locally by D. Gilbert Athay and Eliezer Appel of Los Angeles, California, and plaintiff was represented by Assistant United States Attorney Brooke C. Wells. Supplemental memorandums were submitted to the court, and the matter taken under advisement.

### Facts

On December 19, 1995 Deputy Phil Barney of the Sevier County Sheriff's Office stopped a mini-van traveling on I–70 for speeding (70 mph in a 65 mph zone) and for excessively tinted windows. When Deputy Barney turned on the overhead lights in his patrol car, he activated the video camera mounted thereon and the sound recording system which included a microphone worn on his shirt. Deputy Barney approached the van and asked Gloria Nuno for her driver's license and registration. Nuno handed Deputy Barney her driver's license and a title which reflected that she had titled the mini-van in Illinois on October 3, 1994. Deputy Barney informed Nuno of the traffic violations for which he had stopped her and asked questions concerning her residence and the purchase of the mini-van.

Deputy Barney returned to his patrol car with Nuno's driver's license and title. A check with police dispatch revealed that the car was registered to Nuno in Illinois and had last been owned by Max Ramos. Ra-

mos' registration had expired in California on April 8, 1994, five months prior to the date that Nuno had titled the car in Illinois. Deputy Barney went back to the mini-van and handed Nuno her driver's license, title, and a warning citation for excessive window tint. At the evidentiary hearing, the parties disputed whether Deputy Barney actually returned the documents to the defendant as he said he did. Deputy Barney testified that he returned Nuno's documents when he went back to the mini-van, but defendant claimed that he never returned them. After reviewing the video and hearing the testimony of the parties, this court finds that Deputy Barney did in fact return the documents to Nuno as he testified. Deputy Barney's testimony is credible and not controverted by the video. In fact, the video corroborates his testimony: Deputy Barney can been seen carrying papers as he approaches the mini-van and he is not holding them when he steps away from the vehicle. The defendant maintained at the hearing that the documents had remained in Deputy Barney's patrol car throughout the stop since they were on the dash board of the patrol car when the parties were at the police station. However, Deputy Barney testified that after he initially returned the documents to defendant he subsequently went to the mini-van to get Nuno's purse for her and brought the documents back to the patrol car at that time. The video corroborates his testimony. He can been seen carrying papers back to the car along with her purse after her arrest.

After Deputy Barney returned the documents to defendant Nuno, he asked her where, how much she had paid, and from whom she purchased the mini-van in view of the lapse of time between expiration of Ramos' registration and Nuno's titling the vehicle. She said that she bought the car from a private person in Chicago for $7,000, and that at the time it had California plates. Deputy Barney asked Nuno if she was carrying narcotics, to which she replied "no". Deputy Barney then asked whether she would mind if he looked inside the van. The parties dispute Nuno's answer and it is not clear from the video-audio tape, but it is clear from the tape that she cooperated and consented to a search of the vehicle. Nuno

responded "sure" when Deputy Barney asked if she would step out of the car, and she responded "sure" when Deputy Barney asked her if he could unlock the other doors. The video clearly shows that immediately thereafter Deputy Barney stepped back from the van, Nuno got out of the van, and Nuno and Deputy Barney walked around to the other side of the mini-van. Nuno then opened the passenger door and the sliding side door for Barney. At no time did Nuno indicate that she did not want Deputy Barney to look into the van. To the contrary, she opened the doors for him voluntarily. Nuno testified that Deputy Barney was not angry, did not touch her, never drew his weapon, and that she walked freely around the vehicle.

Once Deputy Barney entered the passenger area of the mini-van he immediately observed white waffle-patterned shoe prints on the floor near the passenger seat and the same prints in the rear portion of the van. He was also able to observe unusual seat molding around the rear seats which apparently had been carved out and re-secured, carpeting which had been cut out and seamed together, and an unusual raised floor. Deputy Barney regarded these observations as probable cause for further search without a warrant, so he went to the trunk and opened it.

After lifting up the carpet in the trunk Deputy Barney saw several packages which from past experience he recognized as likely packages of cocaine. He observed concealed doors to the hidden compartments which contained the numerous packages of the suspected cocaine. Deputy Barney placed Nuno under arrest, read her the Miranda warnings, and then took her and the mini-van to the Sevier County Sheriff's Office for booking and inventory of the vehicle.

### Discussion

*INVESTIGATIVE DETENTION*

The Tenth Circuit, in *United States v. Lee,* 73 F.3d 1034 (10th Cir.1996), recently discussed the standard to be used to determine whether an initial traffic stop and investigative detention is reasonable:

Pursuant to Terry, we make a dual inquiry in

> determining the reasonableness of an investigative detention. First, we are supposed to examine "whether the officer's action was justified at its inception".... Our second inquiry ... is whether the officer's action "was reasonably related in scope to the circumstances which justified the interference in the first place."

Id. at 1038, citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*—Initial Stop*

Under the first inquiry, the Tenth Circuit has said that "[o]ur sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." United States v. Botero–Ospina, 71 F.3d 783 (10th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 2529, 135 L.Ed.2d 1052 (1996).

In the case at bar, Deputy Barney had a reasonable suspicion that Nuno had violated the speed limit and the law prohibiting excessive window tinting because of the reading on his radar gun and his own observations of the window tinting. Nuno has not argued that the initial stop was illegal.

*—Determination of Right to Operate Vehicle*

■ Under the second inquiry concerning reasonableness for an investigative detention, the Supreme Court has declared that it must "last no longer than is necessary to effectuate the purpose of the stop," and "[t]he scope of the detention must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). In this regard, the Tenth Circuit ruled in United States v. Sandoval, 29 F.3d 537, 540 (10th Cir.1994), that "[w]hen the driver has produced a valid driver's license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." See also, United States v. Walker, 933 F.2d 812 (10th Cir.1991), cert. denied, 502 U.S. 1093, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992); United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir.1988).

This case is distinguishable from Walker, a case particularly relied upon by defendant. In that case, the Tenth Circuit found that detention of the defendant unreasonably extended beyond the length necessary for the issuance of a citation. Walker, 933 F.2d 812. However, the police officer in Walker retained possession of the defendant's license and registration and then proceeded to ask the defendant questions unrelated to the traffic stop. Id. at 814. Here, Deputy Barney returned Nuno's documents and the traffic matter was concluded before the further conversation and subsequent questions.

Under the circumstances of this case, the court determines that the investigative detention conducted by Deputy Barney was reasonable and that it was conducted within a reasonable time frame.

## CONSENSUAL ENCOUNTER

■ The Supreme Court has just clarified the law concerning further conversations between police officers and motorists after conclusion of an investigative detention. In Ohio v. Robinette, —— U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), the court ruled that there is no bright-line or per se rule which would prohibit further conversation of a consensual nature, or require a police officer specifically to tell a person that she is free to leave before engaging in such conversation.[1] Accordingly, further conversation between Deputy Barney and defendant Nuno after return of the documents would be permitted if it constituted a consensual encounter. The Tenth Circuit has ruled that "an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him." Lee,

---

1. In *Robinette*, the Supreme Court said that it has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the [Fourth Amendment] reasonableness inquiry." *Robinette* at ——, 117 S.Ct. at 421 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). The Supreme Court also stated that "it would be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." *Id.* at ——, 117 S.Ct. at 421.

at 1040; *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1483 (10th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994); *United States v. Lambert,* 46 F.3d 1064, 1068 (10th Cir.1995); *Walker* at 817. Once the documents are returned, however, the Tenth Circuit has affirmed that further consensual conversation may occur:

> [O]nce the officer has returned the driver's license and registration ... questioning about drugs and weapons or a request for voluntary consent to search may be an ordinary consensual encounter between a private citizen and a law enforcement official so long as a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information.

*United States v. McKneely,* 6 F.3d 1447, 1450 (10th Cir.1993) (citations omitted). As just noted, the Supreme Court very recently has held that the Fourth Amendment does not necessarily require that a defendant be told he is "free to go" before consent to search will be recognized as voluntary. *Ohio v. Robinette.*[2]

This court determines from the totality of facts and circumstances that the further conversation between Deputy Barney and defendant Nuno, after return of the documents and transmittal of the warning citation, constituted a consensual encounter. Nuno freely explained her purchase of the vehicle in Illinois, answered questions about the California license plates on the car when she bought it, answered negatively about possession of narcotics, and agreed to a look into the vehicle by Deputy Barney, unlocking and opening the doors for that purpose.

*CONSENSUAL SEARCH*

■ After defendant responded to questions in the consensual conversation following

return of the documents to defendant, Deputy Barney could not further detain Nuno or search her vehicle unless he had probable cause or her consent. *Lee* at 1039. Prior to the initial examination by Deputy Barney inside the vehicle, there was no basis for probable cause. Accordingly, the initial search was conducted on the basis of consent.

■ The government bears the burden of proving the voluntariness of consent, which must be proven to have been freely given without duress or coercion, express or implied. *McKneely* at 1453; *See, e.g., United States v. Espinosa,* 782 F.2d 888, 892 (10th Cir.1986) (consent upheld where "[n]o threat, promise or force was used to obtain the consent" and defendant watched officer search vehicle without objecting). Voluntariness of consent is a question of fact to be determined from the totality of the circumstances. *Guzman,* at 1520, *citing Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).[3]

Based upon the totality of circumstances in this case, this court finds that defendant Nuno voluntarily consented to the initial search of the mini-van. Nuno verbally agreed to Deputy Barney's requests to search, her actions demonstrated her consent, and at no time did she indicate that she wanted to revoke her consent.

*PROBABLE CAUSE TO CONDUCT FURTHER SEARCH*

■ Observations made by Deputy Barney in the initial consensual search of the mini-van established probable cause to search the vehicle further. Accordingly, Deputy Barney opened the trunk where he discovered the cocaine. He had probable cause to search without a warrant and to arrest Nuno.

---

**2.** *See* footnote 1 *supra.*

**3.** Defendant argues that the three factors outlined in *United States v. McSwain,* 29 F.3d 558 (10th Cir.1994), applicable in determining voluntariness of consent after an *illegal* detention, should be applied here. Those factors are: 1) the temporal proximity of the detention and the consent; 2) any intervening circumstances; and

3) the purpose or flagrancy of the officer's unlawful conduct. *McSwain* at 562 (emphasis added). However, the Tenth Circuit has held that once it is concluded that the initial stop is *lawful,* the government does not have the heavier burden that exists when consent follows an illegal stop. *United States v. Deases,* 918 F.2d 118, 122 n. 1 (10th Cir.1990), *cert. denied,* 501 U.S. 1233, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991) (emphasis added).

■ When probable cause exists to search a vehicle, the entire vehicle and any compartments and containers therein may be searched. *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982); *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

Based upon the foregoing, this court determines that the initial stop and investigative detention were reasonable, the subsequent conversation constituted a permissible consensual encounter, the defendant voluntarily consented to the initial search (as well as the entire search), and there was probable cause to conduct a further warrantless search. It follows that the cocaine produced from the search is admissible. Therefore, defendant's motion to suppress is **Denied.**

IT IS SO ORDERED.