**UNITED STATES of America, Plaintiff,**

v.

**Tony L. COWDIN, Defendant.**

**No. CR.A.97–20024–01–EEO.**

United States District Court,
D. Kansas.

Nov. 6, 1997.

Robert S. Streepy, Lewis M. Reagan, Office of United States Attorney, Kansas City, KS, for U.S.

J. Steven Schweiker, Overland Park, KS, for defendant Tony L. Cowdin.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on defendant's motion to suppress (Doc. # 15). The court held an evidentiary hearing regarding defendant's motion on November 3, 1997. After careful consideration of the parties' arguments and evidentiary materials, the court is prepared to rule. For the reasons set forth below, defendant's motion is granted in part and denied in part.

### Factual Background

On March 19, 1997, Deputy Sheriff Jeff Norling responded to several 911 hang-up calls from defendant's residence. When Deputy Norling arrived, defendant's wife, Heidi Cowdin, came out of the house and said that Tony and her had an argument. Mrs. Cowdin said that the defendant pulled her hair and threw her to the floor. Shortly thereafter Undersheriff Craig Davis arrived at the scene. Undersheriff Davis stated that Mrs. Cowdin was visibly upset, her hair was disheveled, and she was crying. Deputy Norling also stated that Mrs. Cowdin was visibly shaken. While Undersheriff Davis stayed with Mrs. Cowdin, Deputy Norling talked with Mr. Cowdin who denied any physical contact with his wife during the argument. Undersheriff Davis told Deputy Norling that under the Franklin County Sheriff's Office Domestic Violence Policy, he thought that defendant should be taken in for a statement and that he thought that defendant would probably be arrested for domestic battery. Defendant was arrested and taken into custody at the Franklin County Jail.

Mrs. Cowdin left the residence in her car with her mother and child. Shortly thereafter, Mrs. Cowdin was pulled over by deputies and told that Sheriff Rex Bowling wanted to speak to her and that she had to go immediately to the sheriff's department. Mrs. Cowdin went to the sheriff's department where she was interviewed by Undersheriff Davis and Detective Allen Campbell. Based on the interview and Undersheriff Davis' observation of a potentially stolen radio at defendant's residence, Detective Campbell requested a search warrant of defendant's residence for various stolen items, firearms, and drugs. Relying on Detective Campbell's affidavit, Judge Phillip M. Fromme issued the search warrant. The search warrant included defendant's house, the driveway, and all vehicles located on the property. Officers executed the search warrant the evening of March 19 and the following day, March 20.

On March 20, after signing a *Miranda* waiver, defendant was interviewed by Detective Campbell and Special Agent Bruce Stukey of the Bureau of Alcohol, Tobacco and Firearms. While the search of defendant's residence was still in progress, defendant's sister, Julie Syens, arrived at defendant's residence in her automobile. Officers searched Ms. Syens' car. During the search of Ms. Syens' car, officers recovered a .22 caliber revolver from the trunk. Ms. Syens told the officers that the revolver belonged to her brother, Mr. Cowdin. One of the officers contacted Agent Stukey to inform him of the revolver. At the time Agent Stukey received the call, he was in the process of interviewing Mr. Cowdin. Agent Stukey asked Mr. Cowdin about the .22 caliber revolver. Mr. Cowdin said that he had possessed the revolver until he gave the gun to his sister approximately one week earlier.

### Analysis

Defendant moves to suppress two categories of evidence on separate grounds. First, defendant contends that his arrest for domestic battery was without probable cause and, accordingly, his statements to police after he was arrested should be excluded. Next, defendant maintains that the search of his sister's automobile was unlawful and that the revolver discovered in the trunk of the automobile and the statements defendant made regarding the revolver should be excluded.

### I. Arrest Of Defendant.

Defendant was arrested for domestic battery. Defendant maintains that the officers lacked probable cause to make the arrest. Kansas law requires local law enforcement agencies to adopt written policies regarding domestic violence calls including a statement directing that "the officers shall make an arrest when they have probable cause to believe that a crime is being committed or has been committed." Kan. Stat. Ann. § 22–2307. The Franklin County Sheriff's Office adopted a domestic violence policy in accordance with this requirement. The policy provides that "*you must make an arrest if you have probable cause.*" (emphasis in original). Probable cause has been defined as a "reasonable or fair probability." Probable cause exists if facts and circumstances within the arresting officer's knowledge, and of which the officer has reasonably trustworthy information, are sufficient to lead a prudent officer to believe that the arrestee has committed, or is committing an offense. *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995); Franklin County Sheriff's Office Domestic Violence Policy, Definitions, Part C, "Probable Cause."

In the instant action, Deputy Norling was called to defendant's residence after several 911 hang-up calls. Deputy Norling observed that Mrs. Cowdin was upset. Mrs. Cowdin told Deputy Norling that defendant had pulled her by her hair and threw her to the floor. Undersheriff Davis also noticed that Mrs. Cowdin was visibly upset, her hair was disheveled, and she was crying. Mr. Cowdin denied that he made any physical contact with Mrs. Cowdin. Mrs. Cowdin's mother said that she was in another room during the argument and she did not see or hear any physical contact between Mr. and Mrs. Cowdin. Mrs. Cowdin's mother apparently did not affirmatively state that there was no physical contact, only that she was unaware of any physical contact.

After reviewing all of the evidence presented at the hearing, the court finds that

the facts known to the trained officers at the time of Mr. Cowdin's arrest constituted sufficient probable cause for them to believe that Mr. Cowdin committed domestic battery. In essence, the officers were told two conflicting stories—one by the victim and one by the accused. In light of the 911 hang-up calls, Mrs. Cowdin's physical appearance, and the statements made by both parties, it was reasonable for the officers to accept Mrs. Cowdin's version of the incident. Contrary to defendant's assertions, a victim's statements and appearance alone may be sufficient for an officer to have probable cause to believe that domestic battery has occurred. *See, e.g., Hahn v. City of Kenner,* No. CIV.A. 96–2425, 1997 WL 539672, at *4 (E.D.La. Aug.28, 1997) ("probable cause determinations predicated on information furnished by a victim are generally considered to be reliable.") (quoting *B.C.R. Transport Co., Inc. v. Fontaine,* 727 F.2d 7, 10 (1st Cir.1984)); *Spiegel v. Cortese,* 966 F.Supp. 684, 691 (N.D.Ill.1997) ("A police officer is by no means expected to conduct a trial-type inquiry before making [a probable cause] determination; in fact, a statement by the victim of the crime will usually suffice.") (citing *Gramenos v. Jewel Cos., Inc.,* 797 F.2d 432, 439 (7th Cir.1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987)). For the above reasons, the court finds that the officers had probable cause to arrest defendant.

## II. Search of Ms. Syens' Car.

■ The government argues that defendant does not have standing to challenge the search of Ms. Syens' car because he had no reasonable expectation of privacy in his sister's car or in the revolver found in her car. Although defendant generally would lack standing to challenge a search of his sister's car, defendant maintains that the search of his sister's car was a fruit of the unlawful search of defendant's residence and therefore any evidence obtained in the subsequent search of the car should be suppressed. Accordingly, defendant has standing to move to suppress the evidence obtained as a result of the search of his sister's car. *See United States v. McKneely,* 6 F.3d 1447, 1450 (10th Cir.1993) ("Even if [a] defendant lacks standing to challenge the search of the car, if the

initial stop was illegal, the seized contraband is subject to exclusion under the 'fruit of the poisonous tree' doctrine.") (quoting *United States v. Erwin,* 875 F.2d 268, 269 n. 2 (10th Cir.1989)). To evaluate defendant's claim, we must address first whether there was probable cause for issuance of the search warrant of defendant's residence, and if not, then we must determine if Ms. Syens' consent to the search of her automobile on defendant's property was tainted by the issuance of the search warrant.

### A. Probable Cause For Issuance Of Warrant.

■ In a state court action against Mr. Cowdin, Judge Sachse of the Franklin County District Court ordered that evidence seized pursuant to the search warrant of defendant's residence would be suppressed as evidence in the state court action. *See State of Kansas v. Tony L. Cowdin,* No. 97–CR–153, Aug. 14, 1997 Order Granting Motion To Suppress Evidence at 4. Judge Sachse concluded that the judge who issued the warrant was deliberately misled by the omission of material information by Detective Campbell, the officer who applied for the search warrant. *Id.* at 3–4. In particular, Detective Campbell omitted information that Mrs. Cowdin "had been previously convicted of falsely reporting a crime; that she had, at least twice previously, been institutionalized for drug abuse, and in fact, may have been intoxicated at the time she gave information to the officers, and that she was romantically involved with a City of Ottawa police officer." *Id.* at 3. Although the State of Kansas has filed an interlocutory appeal of Judge Sachse's order which currently is pending before the Kansas Court of Appeals, we give deference to Judge Sachse's findings. In addition, we note that the government in the instant action does not contend that Judge Sachse reached the wrong result. After reviewing Judge Sachse's order, the state court hearing transcript, and the authorities cited in Judge Sachse's order, we conclude that the search warrant of defendant's residence was invalid and evidence obtained during the execution of the search warrant should be suppressed in this case.

### B. *Ms. Syens' Consent To Search Of Automobile.*

Having determined that the search warrant for defendant's residence was invalid, we must determine next whether the revolver discovered in the trunk of Ms. Syens' car is "fruit of the poisonous tree." This inquiry is difficult because there is little record evidence regarding the circumstances surrounding the search of Ms. Syens' car. The government argues that the revolver found in Ms. Syens' car is admissible because Detective Fredricks asked Ms. Syens if it would be all right if he searched her vehicle to make sure that she did not have any illegal drugs in the car and that Ms. Syens stated "of course" and that she "had nothing to hide." Initially, we note that the government did not provide Detective Fredricks' report or offer Detective Fredricks as a witness at the suppression hearing. Therefore, there is no record evidence that Ms. Syens consented to the search of her car. Even if Ms. Syens gave her consent to the search of her car, the government has the burden to establish that (1) her consent was voluntary in light of the illegal search warrant and (2) there was a break in the casual connection between the illegal search of defendant's residence and Ms. Syens' consent. *See United States v. Melendez–Garcia,* 28 F.3d 1046, 1054 (10th Cir.1994) (citing *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416–17, 9 L.Ed.2d 441 (1963)); *United States v. Walker,* 933 F.2d 812, 817 (10th Cir.1991) ("[C]onsent given following a Fourth Amendment violation may be valid if it is voluntary in fact.") (citation omitted), *cert. denied,* 502 U.S. 1093, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). Although these are two separate requirements, the factual inquiries overlap to a significant degree. *See Melendez–Garcia,* 28 F.3d at 1054.

■ The court looks at the totality of circumstances to determine whether a consent is voluntary in fact. *See Walker,* 933 F.2d at 817 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). "If the consent is not sufficiently an act of free will to purge the primary taint of the illegal [warrant], however, it must be suppressed as 'fruit of the poisonous tree.'" *United States v. Maez,* 872 F.2d 1444, 1453 (10th Cir.1989), *cert. denied,* 498 U.S. 1104,

111 S.Ct. 1005, 112 L.Ed.2d 1087 (1991). Courts consider a variety of factors in determining whether a consent is voluntary but primarily focus on "the temporal proximity of the illegal detention and the consent, any intervening circumstances, and, particularly, the purpose and flagrancy of the officer's unlawful conduct." *Walker,* 933 F.2d at 818 (citing *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975)). "The government has the burden of proving the voluntariness of consent, and that burden is heavier when consent is given after an illegal [detention]." *United States v. McSwain,* 29 F.3d 558, 562 (10th Cir.1994) (quoting *United States v. Fernandez,* 18 F.3d 874, 881 (10th Cir.1994)); *see Brown,* 422 U.S. at 604, 95 S.Ct. at 2262.

Here, the individual who owns the property which was searched pursuant to the illegal search warrant, *i.e.,* Mr. Cowdin, is different than the individual who consented to the subsequent search of the car, *i.e.,* Ms. Syens. Given the location of Ms. Syens and her car on defendant's property, however, we must evaluate whether her consent was voluntary and whether there was a break in the casual connection between the illegal search of defendant's residence and Ms. Syens' consent. *See Maez,* 872 F.2d at 1453–56 (court evaluated whether the consent of defendant's wife to a search of their residence was tainted by the defendant's illegal arrest).

■ The government has not presented any evidence on the voluntariness of Ms. Syens' consent or the casual connection between the search of defendant's residence and Ms. Syens' consent. Instead, the government argues without any evidentiary support that Ms. Syens' car was not searched pursuant to the warrant and that the warrant is not applicable to the search of the car. The warrant itself, however, provides that the items identified in the warrant shall be searched for in defendant's residence and in "all vehicles located on [the] property." Although the .22 caliber revolver is not listed as one of the items seized during the search of defendant's residence, the government has presented no evidence that the officers had an independent reason for requesting Ms. Syens to consent to a search of her car or

that the search of her car was part of a "consensual encounter." The government simply has not met its burden of showing that Ms. Syens consented to the search of her car, her consent was voluntary, and there was a break in the casual connection between the illegal search of defendant's residence and her consent. Therefore, the court must suppress the .22 caliber revolver obtained as a result of the search of Ms. Syens' car. The court also will suppress defendant's statements regarding the .22 caliber revolver made to Agent Stukey and Detective Campbell after Agent Stukey and Detective Campbell told defendant of the discovery of the revolver in the trunk of Ms. Syens' car.

IT IS THEREFORE ORDERED that defendant's motion to suppress (Doc. # 15) is granted in part and denied in part. The .22 caliber revolver found in the trunk of Ms. Syens' car shall be suppressed as evidence in this case. Defendant's statements regarding the .22 caliber revolver made to Agent Stukey and Detective Campbell after Agent Stukey and Detective Campbell told defendant of the discovery of the revolver in the trunk of Ms. Syens' car also shall be suppressed as evidence in this case. Defendant's motion is denied in all other respects.