UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan Alberto ANGULO–FERNANDEZ,
Defendant–Appellant.

No. 94–4043.

United States Court of Appeals,
Tenth Circuit.

May 3, 1995.

Bruce C. Lubeck, Asst. U.S. Atty., Salt Lake City, Utah (Scott M. Matheson, Jr., U.S. Atty., with him on the brief), for plaintiff-appellee.

Robert L. Booker, Booker & Associates, Salt Lake City, UT (David V. Finlayson, Booker & Associates, with him on the briefs), for defendant-appellant.

Before KELLY and McWILLIAMS, Circuit Judges, and VRATIL, District Judge [†].

PAUL J. KELLY, Jr., Circuit Judge.

Defendant–Appellant Juan Alberto Angulo–Fernandez was convicted of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). He appeals his conviction, having entered a conditional plea of guilty and seeks review of the denial of his motion to suppress. *See* Fed.R.Crim.P. 11(a)(2). Our jurisdiction arises under 28 U.S.C. § 1291. We vacate the district court's order denying the motion and remand for further proceedings.

*Background*

On June 15, 1993, a Utah Highway Patrol trooper was travelling along Interstate 15 when he spotted Mr. Angulo–Fernandez

[†] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

standing next to an automobile parked in the emergency lane with the hood raised. The officer pulled over to render assistance.

The officer and Mr. Angulo–Fernandez dispute how effectively they were able to communicate during their subsequent encounter. According to the officer, who does not speak Spanish, the Defendant spoke broken English, communicating first in Spanish and then puzzling it out into English with the officer's help. Mr. Angulo–Fernandez characterizes the language barrier between the two as much greater; he claims that he did not understand the officer's English, and that the two communicated largely by sign language.

The officer asked the Defendant if his car had broken down. Mr. Angulo–Fernandez motioned to the radiator, which appeared to have overheated. The officer next inquired whether a wrecker was needed. The Defendant's response was equivocal: he asked which town was closer, Cedar City or St. George. He indicated that the vehicle had just been repaired in St. George by producing a repair receipt bearing the date June 15, 1993 and the name "Alberto Angola." Together, the officer and the Defendant added antifreeze to the radiator, started the car, and moved it out of the emergency lane and onto a median.

The officer asked Mr. Angulo–Fernandez where he was going and where he had been. The Defendant replied that he was on his way back to Chicago after spending a couple of days in Las Vegas. Next, the officer inquired whether the car belonged to the Defendant, who in turn responded that he had borrowed the car from a friend. When asked the name of the owner of the car, Mr. Angulo–Fernandez hesitated, whether out of nervousness or inability to understand the officer's question, and finally responded that the vehicle belonged to Manuel Lucero. Unable to understand the owner's last name, the officer offered the Defendant pencil and paper and had him write it down.

The officer then requested the Defendant's license and the vehicle registration. Mr. Angulo–Fernandez claims to have understood this request, both because it has been his experience that police always ask for such documentation, and because the words for "license" and "registration" are similar in Spanish. The officer's suspicions were aroused by the seemingly unusual loan of a car for a cross-country trip, the difference between the spelling of the name on the repair order and Mr. Angulo–Fernandez's license, and the Defendant's apparent hesitancy in revealing the vehicle owner's name. The officer therefore called dispatch and requested a driver's license check, a license plate and registration check, and a warrant check.

The license and warrant checks came back indicating no problem, but dispatch encountered difficulty in the registration check. Eventually dispatch discovered that it had been checking registration for the wrong year, and when it ran the check under the correct year, the registration was found to be valid. In spite of all three checks ultimately revealing no problems, the officer asked dispatch to contact the registered owner to make sure that the Defendant was in lawful possession of the car. Dispatch called the number of Manuel Lucero, but the person on the other end of the line denied ownership of the car.

The officer informed Mr. Angulo–Fernandez that there was a problem with the registration and then inquired whether he was in possession of either drugs or weapons. According to the officer, the Defendant understood the question and responded in the negative. The officer asked to search the car. He testified that Mr. Angulo–Fernandez walked over to the trunk, opened it, reached in and slid a duffel bag toward the officer. The Defendant, on the other hand, claims that he had no idea what the officer was saying and that he did not open the trunk for the officer, but rather had opened the trunk earlier to get out a container of antifreeze and had never closed it. The officer searched the car and discovered thirty bundles of cocaine in a concealed compartment hidden between the trunk and the passenger compartment.

### Discussion

■ In reviewing the denial of a motion to suppress, we accept the district court's find-

ings of fact unless they are clearly erroneous. *United States v. Nielsen,* 9 F.3d 1487, 1489 (10th Cir.1993). In the context of a hearing on a motion to suppress, we are mindful that "the credibility of the witnesses and the weight given to the evidence, as well as inferences and conclusions drawn therefrom, are matters for the trial judge." *United States v. Fernandez,* 18 F.3d 874, 876 (10th Cir.1994). Of course, the ultimate question of the reasonableness of a search or seizure is a question of law that we review de novo. *United States v. Horn,* 970 F.2d 728, 730 (10th Cir.1992).

### A. Standing

■ It is axiomatic that the threshold issue of Fourth Amendment standing, whether the search in question violated the rights of the defendant seeking to exclude evidence, must first be addressed in deciding a motion to suppress. *See Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). The government contends that the Defendant lacks standing to challenge the excludability of the drug evidence because his possessory interest in the car did not give rise to the sort of expectation of privacy recognized by society as objectively reasonable. We disagree.

The officer's testimony established that Mr. Angulo–Fernandez had claimed to have borrowed the car from the rightful owner and had produced a registration bearing the owner's name. Although such evidence may not be determinative of the Defendant's right to possess the car, absent evidence to the contrary, it is sufficient to meet his burden of demonstrating Fourth Amendment standing. *See United States v. Soto,* 988 F.2d 1548, 1553–54 (10th Cir.1993).

The officer's testimony that the alleged registered owner, when contacted, denied ownership of the car does not, standing alone, suffice as evidence that Mr. Angulo–Fernandez wrongfully possessed the car. Without more, it is pure conjecture to claim that the Defendant stole the car. There are simply too many other possible reasons, such as mistaken identity, confusion, or self-interest, for the person on the other end of the phone line to deny ownership. Hence, we do not find this evidence sufficient to undermine the Defendant's standing to challenge the search of the car.

### B. The Encounter

In order to analyze both the degree of police intrusiveness permitted and the quantum of articulable suspicion supporting the intrusion required under the Fourth Amendment, it is necessary to first characterize the nature of the encounter between a defendant and the police. The district court found the initial contact between Mr. Angulo–Fernandez and the officer to be consensual in nature. We agree.

The officer stopped to help the Defendant with his stalled car; he did not pull Mr. Angulo–Fernandez over for any perceived traffic violation. As in *Florida v. Bostick,* the Defendant's movement "was restricted by a factor independent of police conduct[;]" his car was stalled in a remote area. *See* 501 U.S. 429, 436, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991). "In such a situation, the appropriate inquiry [for determining if the encounter between the officer and the defendant was consensual] is whether a reasonable person would feel free to decline the [officer's help] or otherwise terminate the encounter." *See id.* We find that Mr. Angulo–Fernandez could have declined the officer's assistance and was free "'to disregard the police and go about his business.'" *Id.* at 434, 111 S.Ct. at 2386 (quoting *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991)). The present case is thus analytically distinguishable from *United States v. McSwain,* 29 F.3d 558, 561 (10th Cir.1994), which held that once the purpose of an initially nonconsensual traffic stop was satisfied, subsequent questions exceeded the scope of the stop's underlying justification. But when, as here, the encounter is initially consensual, a police officer is free, at least at first, to pose basic questions and to request consent to search. *See Bostick,* 501 U.S. at 434–35, 111 S.Ct. at 2386–87.

Unfortunately, the record before us is insufficient to permit a determination of whether at some point the consensual meeting between the officer and Mr. Angulo–Fernandez evolved into a nonconsensual encounter.

The officer testified that he asked for and was given the Defendant's license and vehicle registration; however, the record is devoid of any indication as to when he gave these documents back. We have previously held that a police officer's continued retention of these documents takes the encounter out of the consensual realm, and into that of a stop requiring reasonable suspicion. *United States v. Gonzalez–Lerma*, 14 F.3d 1479, 1483 (10th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994). Furthermore, we also have found that if an officer retains a driver's license, he must have reasonable and articulable suspicion for questioning the driver about drugs or weapons. *United States v. Turner*, 928 F.2d 956, 959 (10th Cir.), *cert. denied*, 502 U.S. 881, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991). In other words, the officer's questions must concern the conduct that he has found objectively suspicious. *See* 3 Wayne R. LaFave, *Search and Seizure* § 9.2(f), at 375–76 (2d ed. 1987). Without knowing how long the officer retained the license and vehicle registration, we are unable to decide when and if the encounter between the officer and the Defendant became one triggering Fourth Amendment scrutiny.

## C. The Search

The district court found that reasonable suspicion justified the officer's preliminary search of the vehicle, which in turn provided probable cause for a more intrusive search into a hidden compartment containing the cocaine bundles. We think probable cause was required when the officer commenced searching the trunk.

 It is well established that in order to search a vehicle without consent, a police officer must have either a search warrant or probable cause. *See Chambers v. Maroney*, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1970). Mere reasonable suspicion will not suffice. Thus, assuming that Mr. Angulo–Fernandez did not consent to the search and that the trunk was not already open, the officer needed probable cause, not just reasonable suspicion, to search without a warrant. This probable cause did not exist. The few facts that had

aroused the officer's suspicions simply did not give rise to "the fair probability that contraband or evidence of a crime [would be discovered]" inside the car's trunk. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

Of course, the existence of probable cause is irrelevant if Mr. Angulo–Fernandez in fact voluntarily consented to the search. Because the district court found probable cause for the search, it did not make any findings regarding the issue of consent, which is an issue of fact. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States v. Lowe*, 999 F.2d 448, 450 (10th Cir.1993). We therefore remand the present case to the district court so that such findings may be made.

On remand, the district court will need to consider whether the Defendant voluntarily consented to the search, and whether the search undertaken exceeded the scope of any consent given. *See United States v. Dewitt*, 946 F.2d 1497, 1500 (10th Cir.1991), *cert. denied*, 502 U.S. 1118, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992). This Circuit has established a two-step test for determining voluntariness. First, the government must proffer "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given." *Id.* (internal quotations omitted). Furthermore, the government must prove that this consent was given without implied or express duress or coercion. *Id.*

As part of these considerations, the district court will need to further examine the nature of the encounter between the Defendant and the officer prior to the search. The district court has stated that reasonable suspicion existed to justify the officer's asking Mr. Angulo–Fernandez whether he was in possession of drugs or weapons. We previously have held that a "defendant's lack of a valid registration, license, bill of sale, or some other indicia of proof to lawfully operate and possess the vehicle in question, [may give] rise to objectively reasonable suspicion that the vehicle may be stolen." *Fernandez*, 18 F.3d at 879. The district court should explain the basis for its apparent conclusion

that the telephonic disclaimer of ownership by the purported owner in another state gave rise to reasonable suspicion of unlawful activity concerning drugs or weapons. If the lower court determines that the Defendant was in any way illegally detained, then it must also confront the question of whether there was sufficient attenuation between this detention and consent to search. *See Turner*, 928 F.2d at 958. Insufficient attenuation will result in suppression of the evidence discovered during the search of the car. *See id.* The district court's order denying the motion to suppress is vacated and the case is

REMANDED.