**UNITED STATES of America,**
**Plaintiff,**

v.

**Lohnie E. GRAY, Defendant.**

**No. 98–40103–01–RDR.**

United States District Court,
D. Kansas.

April 14, 1999.

Randy M. Hendershot, Office of U.S. Attorney, Topeka, KS, for U.S.

Marilyn M. Trubey, David J. Phillips, Office of Federal Public Defender, Topeka, KS, Lohnie E. Gray, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

The defendant is charged with possession of firearms by a felon in violation of 18 U.S.C. § 922(g). This matter is presently before the court upon defendant's motion to suppress.

This case arises from the actions of law enforcement officers to execute an arrest warrant for Jandrea Sue Siebold. During their efforts to arrest Ms. Siebold, officers observed firearms in the residence of the defendant. The defendant now seeks to suppress the evidence that was discovered, claiming that the officers violated the Fourth Amendment in the discovery and seizure of the firearms. The court conducted a hearing on the defendant's motion and is now prepared to rule.

FINDINGS OF FACT

1. On October 27, 1998, three law enforcement officers went to a trailer located at 4725 SW Topeka Boulevard in Topeka, Kansas in an effort to arrest Jandrea Sue Siebold. The officers had a felony arrest warrant for Ms. Siebold with that address on it. The arrest warrant contained a picture of Ms. Siebold and a description of her. The officers went to the trailer and knocked on the door. Jerina Bessette answered the door. The officers indicated that they were there looking for Ms. Siebold. Ms. Bessette told them that Ms. Siebold was not at the trailer. Ms. Bessette indicated that Ms. Siebold had at times visited the trailer but that she had never lived there. She informed the officers that Ms. Siebold might be found in the area of 17th and Taylor in Topeka.

2. The officers left the trailer and began to talk with neighbors in the area of the trailer. After a short conversation with the neighbors, the officers returned to the trailer. They had been told by someone that the woman in the trailer might be the person they were seeking. This person had indicated that a weight change and a hair color change might account for the differences in appearance between the person in the trailer and the picture and description of Ms. Siebold. Gregory Cochran of the Topeka Police Department knocked on the door again and asked Ms. Bessette to provide some identification. Ms. Bessette said she would have to get her identification, and she left the doorway to procure it. As she left, she left the front door open. She did not, however, invite the officers into the trailer. Officer Cochran asked if they could enter the trailer. Ms. Bessette never provided any response. Officer Cochran entered without permission from Ms. Bessette. Once inside, Officer Cochran proceeded to follow Ms. Bessette to the bedroom. Ms. Bessette heard the officer as they walked down the hallway and was surprised to see him in the trailer following her. She did not, however, make any protest of Officer Cochran's presence.

3. At the hearing, Officer Cochran suggested that he followed Ms. Bessette to the bedroom for two reasons. First, he said that he followed her in order to prevent her from escaping. Second, he indicated he was concerned that she might obtain a weapon and use it.

4. In the bedroom, Officer Cochran observed an open drawer where he saw some vegetation in a baggie that he believed was

marijuana. He also saw a type of spoon in the drawer that is commonly used for cooking methamphetamine and cocaine. He also saw some bongs, devices used for smoking marijuana, in the bedroom. He then called for assistance from the narcotics unit of the Topeka Police Department.

5. officer Charles Bolander of the Topeka Police Department subsequently arrived and was later given permission to search the trailer by Ms. Bessette. During the search, the firearms were seized. Officers later learned that the defendant had a felony conviction.

CONCLUSIONS OF LAW

■ 1. The Fourth Amendment protects people from unreasonable searches of their "persons, houses, papers and effects." U.S. Const. amend. IV. A warrantless search of a house is per se unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment. *Steagald v. United States*, 451 U.S. 204, 211, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Evidence recovered following an illegal entry of the home is inadmissible and must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484–87, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

2. The government acknowledges that Ms. Bessette had an expectation of privacy in the trailer. The government also admits the lack of a search warrant and relies upon consent to justify the entry into the home. The government thereafter relies upon officer safety to put the officer in the area of the illegal contraband that was seen in plain view. Finally, the government relies upon consent to search to justify the subsequent search and seizure in the trailer.

■ 3. The burden of establishing consent to a warrantless search is always upon the government. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Cody*,

7 F.3d 1523, 1526 (10th Cir.1993). The consent must be unequivocal and specific and freely and intelligently given. *United States v. Angulo–Fernandez*, 53 F.3d 1177, 1180 (10th Cir.1995). The importance of consent to enter a home is explained in *Payton*, 445 U.S. at 589–90, 100 S.Ct. 1371:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

4. An invitation or consent to enter a house may be implied in some circumstances. *See United States v. Garcia*, 997 F.2d 1273, 1281 (9th Cir.1993) (concluding that officers' request to talk, combined with Garcia's affirmative response and step back clearing way for officers' entry sufficient to infer consent); *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir.1975) (action of individual in opening door and stepping back constituted implied invitation to enter). *But see United States v. Shaibu*, 920 F.2d 1423, 1427 (9th Cir.1990) (implied consent not found when police contacted a defendant outside of his apartment and he walked back into it without saying anything at all).

■ 5. The facts here fail to show express or implied consent to enter the

trailer. The court did not find sufficient evidence that the officers were invited into the trailer. The court did not find that Ms. Bessette expressly consented to the officers' entry into the trailer. Ms. Bessette specifically denied that she invited the officers into the trailer or agreed to their entry. The court found this testimony credible. In addition, we are not persuaded that the facts showed implied consent to enter. Ms. Bessette did leave the door of the trailer open, but she took no action to indicate to the officers that she was inviting them into the trailer. Upon the officers' request for identification, she simply immediately left to find it. She did not ask them to step in, and she did not move aside to allow them entry into the house. The officers simply entered, after apparently asking for permission to enter. We are not persuaded that Ms. Bessette ever heard Officer Cochran's request for entry. The government attaches some significance to the fact that Ms. Bessette did not object once she discovered that officer Cochran was in the trailer. While this is a factor to consider, we do not find it a controlling factor in light of all the other circumstances. *United States v. Mejia*, 953 F.2d 461, 466 (9th Cir.1991) (defendant's protest or absence of protest "is simply a fact to be considered in determining whether the government has established implied consent"), *cert. denied*, 504 U.S. 926, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992). The government may not show consent to enter solely from the defendant's failure to object to the entry. *United States v. Gonzalez*, 71 F.3d 819, 829–30 (11th Cir.1996); *Shaibu*, 920 F.2d at 1427. In sum, we find that the officers illegally entered the trailer.

■ 6. Even if the court were to find that Officer Cochran lawfully entered the trailer, we do not find that his actions in following Ms. Bessette to the bedroom were in compliance with the Fourth Amendment. It is reasonable under the Fourth Amendment, and it is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested, for an officer to take steps to ensure the officer's safety. *See Maryland v. Buie*, 494 U.S. 325, 333, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (recognizing the "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack"); *Washington v. Chrisman*, 455 U.S. 1, 7, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982) (holding that an officer may accompany an arrested person into the arrested person's residence for the purpose of ensuring officer safety). Here, however, Ms. Bessette was not under arrest. This distinction is critical in considering whether officer Cochran had the ability to do what he did. Absent this fact, officer Cochran needed to demonstrate exigent circumstances to justify his intrusion into the bedroom.

■ 7. Exigent circumstances will justify a warrantless search or seizure in many circumstances: when there is probable cause for the search and seizure and there is an imminent danger that someone will destroy evidence, *Cupp v. Murphy*, 412 U.S. 291, 294–96, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); when the safety of law enforcement officers or the general public is threatened, *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); or when a suspect is likely to flee before the officer can obtain a warrant, *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). There is, however, no absolute test for determining whether exigent circumstances are present because such a determination ultimately depends on the unique facts of each case. *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir.1998). The court must evaluate the circumstances as they would have appeared to prudent, cautious, trained officers. *Id.* Nevertheless, as an exception to the warrant requirement, exigent circumstances must be carefully restricted. *Id.*

■ 8. The court finds, after a review of the totality of the circumstances, that

Officer Cochran was unable to point to any legitimate exigent circumstances requiring his action in this case. Officer Cochran provided no evidence that Ms. Siebold, the individual they were seeking, posed any danger to him, the other officers or the community at large. He offered no evidence that Ms. Siebold had ever had weapons or was a dangerous person. He was unable to inform the court of the nature of the felony warrant. Officer Cochran also did not provide any basis for his belief that Ms. Bessette might be attempting to procure a weapon. He failed to note any conduct by her that would suggest a reason for fear or suspicion.

9. Officer Cochran also explained that he followed her into the bedroom because he feared that she might escape. He failed to offer any evidence as to how this might occur or why the other officers with him could not help prevent this escape.

10. The court is also troubled by the officers' reliance upon the statements of the neighbors as justification for continuing their investigation, particularly in the light of the evidence presented to the court. The government failed to offer any evidence concerning the statements of the neighbors. Officer Cochran was unable to remember the name or names of the neighbors, what they said, or why they believed that the individual the officers were seeking might be the woman in the trailer. The court is forced to guess that the officers had sufficient information to rise to the level of reasonable suspicion. We are not willing to do so in light of the evidence that was presented.

11. In sum, the court finds that the government has not sustained its burden of proving consent to enter the trailer or consent or exigent circumstances for following Ms. Bessette to the bedroom of the trailer. The court finds that these Fourth Amendment violations tainted the ultimate permission that Ms. Bessette gave to the officers to search the trailer. Accordingly, all evidence that was seized and procured as a result of these actions must be suppressed.

IT IS THEREFORE ORDERED that defendant's motion to suppress (Doc. # 16) be hereby granted. All evidence that was seized and procured as a result of Officer Cochran's entry into the defendant's trailer on October 27, 1997 must be suppressed.

IT IS SO ORDERED.