**UNITED STATES of America, Plaintiff,**

**v.**

**Veronica PENA–SARABIA, Defendant.**

**No. 00–20158–01–JWL.**

United States District Court,
D. Kansas.

April 3, 2001.

Brent I. Anderson, Office of U.S. Attorney, Kansas City, KS, for U.S.

James T. George, Lawrence, KS, Veronica Pena-Sarabia, San Bernadino, CA, for defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This matter comes before the court on defendant's motion to suppress (Doc. 26). For the reasons set out below, the motion is denied.

● Findings of fact

On March 26, 2001, this court held an evidentiary hearing on the defendant's motion to suppress. The government presented the testimony of two witnesses, Detective Fred Phillips and Officer Norma Lorenzo, and the defendant testified on her own behalf. According to Detective Phillips, he arranged for an informant to try to buy cocaine from an individual called "Nano." The informant met with two individuals at an arranged meeting place and followed them back to a house in Kansas City, Kansas. The informant told the indi-

viduals that he would return to the house in an hour with money to buy cocaine. Detective Phillips saw the two individuals get out of the jeep in front of the house. He identified one of them as the defendant and said that he heard her yell to the informant, "you'll be back in an hour?"

After the informant left, police decided to conduct a "knock and talk" to try to get consent to search the house. Detective Phillips, Officer Lorenzo and a uniformed Kansas City, Kansas police officer approached the front door. Other officers took positions around the house. After Detective Phillips knocked on the door, someone looked out the bedroom window, which was visible to the officers at the door. Detective Phillips and Officer Lorenzo testified that it was the defendant looking out. The defendant testified that her husband looked out of the window. Officer Lorenzo asked the person, "Can you come out to the front door, please?" Officer Lorenzo and Detective Phillips testified that the defendant opened the door and that Officer Lorenzo spoke to the defendant in Spanish. According to Officer Lorenzo she showed the defendant her badge and asked to talk with the defendant. Officer Lorenzo testified that she asked the defendant for permission to enter the house and the defendant answered "Come on in" and stepped back, allowing Officer Lorenzo and Detective Phillips to step into the house. According to Officer Lorenzo, the defendant walked into the adjoining room and sat on the couch with a man, later identified as her husband. In contrast, the defendant testified that her husband opened the door and that police walked into the house without asking permission and ordered the defendant and her husband to sit on the floor.

Officer Lorenzo testified that she asked the two if there were illegal drugs in the house and the defendant said "no." Officer Lorenzo asked for permission to search the house and testified that the defendant said "go right ahead." According to Officer Lorenzo, she told Detective Phillips that they had consent to search, and Detective Phillips let other officers in through the back door. Detective Phillips testified that, during the search, he found two kilograms of cocaine and a gun in the bedroom.

To the extent that the testimony by Officer Lorenzo and Detective Phillips conflicts with the testimony by the defendant, the court accepts the officers' testimony. Detective Phillips and Officer Lorenzo were calm, candid and had excellent recall of detail. The defendant, on the other hand, was nervous and unsure of her version of events. Her testimony appeared to be either contrived or the product of confusion.

● Discussion

 The only issue before the court is whether the defendant consented to the search of her home. Consent must be voluntary under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The government bears the burden of proving that the consent was "voluntarily given, and not the result of duress or coercion, express or implied." *Id.* at 248, 93 S.Ct. 2041. It must present "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given" and "prove that this consent was given without implied or express duress or coercion." *United States v. Angulo–Fernandez*, 53 F.3d 1177, 1180 (10th Cir.1995).

 The testimony of Officer Lorenzo and Detective Phillips showed that the defendant's consent was voluntarily given and not the result of coercion. Officer Lorenzo and Detective Phillips testified that the defendant and her husband were

calm and cooperative. The defendant denied that there were illegal drugs in the house and told Officer Lorenzo that police could search the house. According to Detective Phillips, there were no guns drawn or visible and everyone was calm and "things were going real smooth." The defendant and her husband were not restrained or placed under arrest. While Officer Lorenzo did not tell the defendant and her husband that they could refuse to consent, this alone is not a basis for the court to find that her consent was not voluntary. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 232–33, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("[W]e cannot accept the position of the Court of Appeals in this case that proof of knowledge of the right to refuse consent is a necessary prerequisite to demonstrating a 'voluntary' consent. Rather it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced."). Under the totality of the circumstances, the court concludes that the defendant's consent was voluntary.

Counsel for the defendant argued at the suppression hearing that, even if the court accepts the officers' version of events, that the defendant's consent was not voluntary. According to defense counsel, because Officer Lorenzo directed the defendant to go to the door, the defendant's subsequent consent was involuntary. For support of this argument, defense counsel cited four decisions. The decisions stand for the proposition that a defendant's acquiescence to the assertion of authority by police does not constitute consent for police to enter a residence. *See Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948) ("Entry to defendant's living quarters . . . was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right."). The cases are easily distinguished from the present one. Officer Lorenzo did not command that the door be opened to allow police to enter the defendant's home. Instead, Officer Lorenzo asked the defendant to come to the door, even ending her request with "please." Upon the defendant opening the door, the police asked if they could enter the house and the defendant said "come on in." Consent to search was given by the defendant shortly thereafter. Unlike the cases cited by defense counsel, the prosecution does not claim that the defendant's act of opening the door constituted consent for the police to enter or search the house. The fact that Officer Lorenzo asked the defendant to open the door does not make the defendant's subsequent consent to search involuntary. In fact, Officer Lorenzo's politeness weighs in favor of finding that the subsequent consent to search was voluntary.

Because the defendant voluntarily gave consent to the search of her home, evidence obtained during the search is admissible pursuant to the consent exception to the warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

**IT IS THEREFORE ORDERED BY THE COURT** that the defendants' motion to suppress (Doc. 26) is denied.

**IT IS SO ORDERED.**