**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 00-1467 |
| | (D. Colo.) |
| RUSSELL EUGENE HIMES, | (D.Ct. No. 00-CR-153-WM) |
| Defendant-Appellant. | |
| | |
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | |
| | No. 00-1491 |
| FELIX ELEAZAR FLORES- | (D. Colo.) |
| MONTOYA, a/k/a Felix Eleazar | (D.Ct. No. 00-CR-153-WM) |
| Flores, a/k/a Flores Felix Montoya, | |
| Defendant-Appellant. | |

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HENRY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**ROGERS**,[**] District Judge.

Defendants Russell Eugene Himes and Felix Eleazar Flores-Montoya entered  conditional guilty pleas to possession with intent to distribute five hundred grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii).  The conditional pleas reserved the right to appeal the district court's denial of their motions to suppress.  The district court sentenced Mr. Himes to ninety months imprisonment, five years of supervised release, and a $100 assessment.  Mr. Flores-Montoya was sentenced to one hundred twenty-one months imprisonment, five years of supervised release, and a $100 assessment.  On appeal, Mr. Himes and Mr. Flores-Montoya challenge the district court's denial of their motions to suppress.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[**]  The Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation.

BACKGROUND[1]

At about 4:00 in the morning on March 23, 2000, Officer Padia stopped to help a red Jeep Cherokee with flashing emergency lights that was parked on the shoulder of I-25 in Weld County, Colorado. Mr. Himes was the driver of the vehicle and Mr. Flores-Montoya occupied the front passenger seat. Another male passenger occupied the Jeep's back seat. Officer Padia parked his patrol car behind the Jeep, illuminated the scene with bright lights attached to his patrol car, radioed for a backup officer, and instructed Mr. Himes to remain in the Jeep.

Officer Padia then approached the Jeep. Mr. Himes told Officer Padia the Jeep's engine had quit. Officer Padia asked for Mr. Himes' driver's license. Upon having a dispatcher check the license, Officer Padia learned a restraining order prohibited Mr. Himes from possessing or consuming alcohol or possessing controlled substances or drug paraphernalia.

At this time, Officer Ermentraut joined Officer Padia. The two officers approached the Jeep. Officer Padia asked Mr. Himes to get out and come to the

---

[1] The record consists primarily of testimony presented in district court at a hearing on the motions to suppress. Five police officers testified. Neither Mr. Himes nor Mr. Flores-Montoya testified.

-3-

back of the Jeep.  After Mr. Himes complied, Officer Padia returned the driver's license and asked Mr. Himes if it was okay to pat him down.  Mr. Himes agreed.

Officer Padia offered to either have a dispatcher call a tow truck or have Officer Ermentraut provide a courtesy ride to Johnson's Corner, where Mr. Himes could call a tow truck himself.  If Mr. Himes elected to accept the courtesy ride, Officer Padia said that he would remain with the Jeep.  Mr. Himes indicated he wanted to be taken to Johnson's Corner.  The officers volunteered to take Mr. Flores-Montoya and the other passenger to Johnson's Corner with Mr. Himes if they would also agree to pat down searches.  Both agreed.  Following the pat-down searches, Mr. Flores-Montoya and the other passenger got in the back seat of Officer Ermentraut's police car.

At this point, Officer Padia asked Mr. Himes for permission to look through the Jeep.  Mr. Himes replied he did not want the officers tearing up the speakers or damaging the vehicle.  Assuring Mr. Himes they would not damage the vehicle, Officer Padia again asked for permission to look through the Jeep.  Again, Mr. Himes responded he did not want the officers tearing anything up.  Seeking further clarification, Officer Ermentraut asked Mr. Himes whether they could search the vehicle and Mr. Himes consented.  The officers put Mr. Himes in

the backseat of Officer Ermentraut's car and proceeded to search the Jeep. They found methamphetamine and drug paraphernalia beneath the base of the rear seat.

After discovering the drugs, the officers arrested and handcuffed Mr. Himes, Mr. Flores-Montoya, and the other passenger. The officers put Mr. Himes and Mr. Flores-Montoya in the back seat of Officer Padia's patrol car. Later, Mr. Flores-Montoya complained his handcuffs were too tight. As Officer Padia loosened them, Mr. Flores-Montoya asked if he would have the opportunity to talk with his lawyer. Officer Padia told him he would. Officer Padia transported Mr. Flores-Montoya to the Greeley Police Department. Mr. Flores-Montoya signed a Miranda waiver. Thereafter, two investigators questioned Mr. Flores-Montoya.

## DISCUSSION

Mr. Himes and Mr. Flores-Montoya argue the district court erred in denying their motions to suppress drugs and drug paraphernalia found during the search of the Jeep. They argue Mr. Himes' consent was the product of an illegal detention and the search went beyond the scope of any consent given. Mr. Flores-Montoya also argues the district court should have suppressed statements he made to police officers and investigators.

-5-

1.  Validity of Consent

Mr. Himes and Mr. Flores-Montoya argue "the evidence found during the warrantless search of [the Jeep] should be suppressed because ... any consent to search was the product of [Mr. Himes'] illegal detention." They argue Mr. Himes was detained from the moment Officer Padia arrived. They claim the detention exceeded the scope of a motorist assist when Officer Padia (1) asked for Mr. Himes' driver's license, (2) had Mr. Himes step out of the Jeep, and (3) conducted a pat-down search of Mr. Himes. Because Mr. Himes and Mr. Flores-Montoya believe these actions amounted to an illegal detention, they argue the consent given to search the Jeep was tainted and the drugs discovered during the search should be suppressed.

The district court rejected Mr. Himes' and Mr. Flores-Montoya's arguments and found Mr. Himes validly consented to the officers' search of the Jeep. The court noted Mr. Himes' consent to search the Jeep was supported by "uncontested testimony." The court found it significant that Mr. Himes' driver's license was returned prior to Mr. Himes' giving consent, and that Mr. Himes was free to choose between having a dispatcher call a tow truck or getting a courtesy ride in a patrol car. Given these factors, the district court concluded Mr. Himes consented to the search and denied the motions to suppress evidence found during the

search.

"'When reviewing a district court's denial of a motion to suppress, we accept its factual findings unless clearly erroneous and view the evidence in the light most favorable to the government.'" *United States v. Hill,* 199 F.3d 1143, 1147 (10th Cir. 1999) (quoting *United States v. Hargus,* 128 F.3d 1358, 1361 (10th Cir. 1997), *cert denied*, 523 U.S. 1079 (1998)), *cert. denied*, 531 U.S. 830 (2000). However, the determination of whether a search is unreasonable and therefore in violation of the Fourth Amendment "is a question of law which we review de novo." *Id.* (citation omitted).

Applying these standards of review, we conclude Mr. Himes' encounter with the police officers was consensual and affirm the district court's denial of the motions to suppress evidence discovered during the search of the Jeep. A search does not violate the Fourth Amendment when a private citizen agrees to the search during a consensual encounter with police officers. *See United States v. Elliott*, 107 F.3d 810, 814 (10th Cir. 1997). In determining if the encounter was consensual, we must ask "'whether a reasonable person would feel free to decline the [officer's help] or otherwise terminate the encounter.'" *United States v. Angulo-Fernandez,* 53 F.3d 1177, 1179 (10th Cir. 1995) (quoting *Florida v.*

*Bostick*, 501 U.S. 429, 436 (1991)).

We have previously held when an officer stops to help a disabled vehicle, the encounter is, at least in the beginning, consensual. *See id.*; *United States v. Madrid,* 30 F.3d 1269, 1276 (10th Cir.), *cert. denied*, 513 U.S. 1007 (1994). Citing *United States v. Packer*, 15 F.3d 654 (7th Cir. 1994), Mr. Himes and Mr. Flores-Montoya argue their encounter with police became a detention when Officer Padia illuminated the scene with lights attached to the patrol car and asked Mr. Himes to remain in the Jeep. In *Packer*, the police officers were responding to a report of a suspicious vehicle. They parked their patrol cars immediately in front of and behind defendants' vehicle and ordered the vehicle's occupants to put their hands in the air. These facts made the *Packer* encounter an investigatory stop. *See id.* at 657. In contrast, Officer Padia parked his patrol car behind the Jeep and took actions that were consistent with a motorist assist. A reasonable person would have felt free to tell Officer Padia he did not need help.

Next, Mr. Himes and Mr. Flores argue Mr. Himes was detained when Officer Padia took Mr. Himes' driver's license. Citing no authority, they argue Officer Padia's request for the license was inconsistent with a motorist assist. We are unable to find any cases to support this proposition. Mr. Himes and Mr.

-8-

Flores-Montoya next rely on *United States v. Walker*, 933 F.2d 812 (10th Cir.), *cert. denied*, 502 U.S. 1093 (1991), to support their claim that Officer Padia's possession of Mr. Himes' license was a detention. Reliance on *Walker* is misplaced because *Walker* involved a driver who was detained following a traffic violation. *Id.* at 813. In contrast to a motorist assist that begins as a consensual encounter, a traffic stop is a seizure. *Walker* held that when an officer retains a driver's license in the context of a traffic stop, the original seizure is extended. *See id.* at 817. On the other hand, because a motorist assist begins as a consensual encounter, a police officer can retain a driver's license for a short period of time without changing the consensual nature of the encounter. *See Angulo-Fernandez,* 53 F.3d at 1179-80) (holding when an officer stopped to help a disabled vehicle, it was impossible to determine whether the encounter was consensual "[w]ithout knowing how long the officer retained the license and vehicle registration"). Viewing the record in the light most favorable to the government, it appears Officer Padia got the license, ran a check on the license, asked Mr. Himes to get out of the Jeep, and then returned the license. From these facts, we conclude Officer Padia's possession of Mr. Himes' drivers license was sufficiently brief so as not to trigger Fourth Amendment scrutiny.[2]

---

[2] In addition, Mr. Himes argues even when his license was returned, he was still detained because he had no vehicle to drive. It is well settled that no detention occurs when the driver's "movement 'was restricted by a factor independent of police conduct';

Mr. Himes and Mr. Flores-Montoya then argue Mr. Himes was seized when he consented to a pat-down search. In support of this proposition, they cite *United States v. Madrid,* 30 F.3d 1269 (10th Cir. 1994). *Madrid* does not support this proposition, but instead illustrates that a pat-down search during a motorist assist can be consensual even when the officer believes the vehicle contains drugs. *Madrid* involved a driver whose vehicle slid off the road. An officer came to the scene, arranged for a tow truck, and transported the driver to the tow yard. Ultimately, drugs were found in the driver's vehicle at the tow yard and the driver was arrested. "There were three pat-downs of [the driver] prior to his arrest, one at the scene of the accident and two at the tow yard." *Id.* at 1274. Notwithstanding the pat-down of the driver at the scene of the accident, we held "the encounter between [the driver] and the law officers did not constitute a seizure until [the driver] was frisked and arrested at the tow yard." *Id.* at 1277. Prior to the arrest and final pat-down search, "[t]he encounter was entirely consensual." *Id.* at 1276. The earlier pat-down search was not enough to "support any claim that [the driver] was coerced or detained," even though the

his car was stalled in a remote area." *Angulo-Fernandez,* 53 F.3d at 1177, 1179 (quoting *Bostick,* 501 U.S. at 436). Mr. Himes also protests because Officer Padia asked him questions related to drugs. This argument fails because during a consensual encounter, an officer can "pose basic questions." *Id.*

-10-

officer suspected that the vehicle contained drugs. *Id.* at 1272-73, 1277. Like the pat-down search of the driver at the scene of the accident in *Madrid*, the pat-down search of Mr. Himes was consensual. Mr. Himes consented to the search and the officers acted reasonably to avoid the potential danger of having an armed passenger in a patrol car.[3]

Viewing the totality of the circumstances in light of applicable case law, we conclude a reasonable person in Mr. Himes' position, at all times prior to consenting to the search of the vehicle, would have felt free "to decline the officer's help or otherwise terminate the encounter." *Angulo-Fernandez,* 53 F.3d at 1179 (quotation marks and citation omitted). Consequently, Mr. Himes' consent to the search of the vehicle was not given while he was illegally detained and therefore was valid.

2. Scope of Consent

Because the search was consensual, we next turn to the issue of whether the search conducted was within the scope of the consent given. Mr. Himes and Mr.

---

[3] In addition, Mr. Himes and Mr. Flores-Montoya argue they were detained when they were locked in Officer Ermentraut's patrol car during the Jeep's search. Whether this amounts to a detention is immaterial because Mr. Himes gave consent before he entered the patrol car.

-11-

Flores-Montoya argue Mr. Himes' consent to search the Jeep "was not clear and unequivocal, and did not authorize the officers to dismantle the interior of his vehicle." We conclude the officers' search was within the scope of Mr. Himes' consent.

Defendants argue Mr. Himes only gave the officers permission to "look at" or "look through" the vehicle, not to perform a general search. Thus, they argue the officers should not have entered the vehicle. They further argue the officers violated the agreement not to tear up the Jeep when they looked under the Jeep's back seat.

The district court determined "the only limitation on the search from the facts presented would be not to tear up the speakers and so forth." The court found "the alleged drugs were found beneath the base of the seat in the rear which was accessed by lifting up the seat by a strap and no damage was done." Accordingly, the court held the search was within the scope of the consent given and denied the motions to suppress.

"Whether a search remains within the boundaries of the consent is a question of fact to be determined from the totality of the circumstances, and a

trial court's findings will be upheld unless they are clearly erroneous." *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990) (citation omitted), *cert. denied*, 501 U.S. 1207 (1991).

We agree with the district court's finding the search conducted was within the scope of consent given by Mr. Himes. Although Mr. Himes and Mr. Flores-Montoya protest that Officer Padia asked only to "look at" or "look through" the Jeep rather than to search it, we conclude, in this case, it is immaterial whether the officers used the words "look at," "look in," "look through," or "search" to describe the search. Each of these expressions would have allowed the officers to enter the Jeep and look under the back seat. *See, e.g., United States v. Gigley*, 213 F.3d 509, 515 (10th Cir. 2000) (holding consent to "look in" vehicle allowed officers to enter the vehicle); *Pena*, 920 F.2d at 1514-15 (holding consent to "look" in vehicle allowed officers to remove vent panel in vehicle); *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir. 1986) (holding consent to "look through" vehicle authorized officer to remove the back seat). According to the uncontested testimony, Mr. Himes agreed the officers could search the Jeep as long as they didn't rip, tear, or damage anything. While Mr. Himes' brief argues the officers "ripped [the back seat] apart" there is no evidence in the record to support this assertion. Instead, the record reveals testimony consistent with the

district court's findings the seat was lifted with a strap designed for that purpose and the officers did not damage the Jeep. Hence, we conclude the search of the Jeep remained within the scope of Mr. Himes' consent.

Finally, Mr. Himes and Mr. Flores-Montoya argue "the district court applied an incorrect standard when evaluating whether valid consent to search was given." They claim the district court's finding that "consent was indicated" was insufficient. According to Defendants, in order to admit the evidence found during the search, the district court would have to make a finding of "unequivocal and specific" consent. We acknowledge consent must be "unequivocal and specific and freely and intelligently given." *United States v. Mendez*, 118 F.3d 1426, 1432 (10th Cir. 1997) (quotation marks and citations omitted). While the district court did not use the words "unequivocal and specific," the court did find "the uncontested testimony is that Mr. Himes consented." We have reviewed the circumstances of Mr. Himes' consent and conclude the district court's findings were sufficient to deny the motion to suppress. *C.f. Pena*, 143 F.3d at 1366 (upholding district court's denial of a motion to suppress when the district court found only "that consent was given").

3.  Admissibility of Statements

In addition to his appeal of the district court's denial of his motion to suppress evidence discovered during the search of the Jeep, Mr. Flores-Montoya also seeks review of the denial of a motion to suppress statements he made to the police. He argues when he asked Officer Padia if he would have the opportunity to speak with a lawyer, he was actually requesting a lawyer. Because he was not provided a lawyer, he contends any statements made to the police after this conversation with Officer Padia should have been suppressed.

In considering an alleged request for counsel, we review the district court's factual findings for clear error. *See United States v. Zamora*, 222 F.3d 756, 765 (10th Cir.), *cert. denied*, 531 U.S. 1043 (2000). In this case, the district court did not make any findings addressing Mr. Flores-Montoya's alleged request for counsel. However, in this case the record is clear and there is no dispute as to the words Mr. Flores-Montoya used. "Whether [the] words [used] actually invoked the right to counsel is a legal determination, reviewed de novo." *Id.* (quotation marks and citation omitted).

We recognize "if the suspect invokes the right to counsel at any time, the police must immediately cease questioning him until an attorney is present."

*Davis v. United States*, 512 U.S. 452, 462 (1994). We conclude Mr. Flores-Montoya did not invoke the right to counsel. The Supreme Court has held that if a request for counsel "is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," the officer is not required to suspend questioning until counsel is present. *Id.* at 459 (emphasis in original). The uncontested testimony of Officer Padia states Mr. Flores-Montoya "asked if he would have the opportunity to talk with his lawyer." While Mr. Flores-Montoya contends this was a request for counsel, the statement could just as easily be interpreted as a query about his rights.[4] Because the statement is ambiguous, we affirm the district court's denial of the motion to suppress statement made by Mr. Flores-Montoya.

CONCLUSION

We **AFFIRM** the district court's denial of Mr. Himes' and Mr. Flores-Montoya's motions to suppress the evidence discovered during the search of the

---

[4] This interpretation is consistent with Mr. Flores-Montoya signing a *Miranda* waiver and never again mentioning a lawyer.

Jeep.  We also **AFFIRM** the district court's denial of Mr. Flores-Montoya's

motion to suppress statements made to the police.

 

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge